F I L E D
OCT 16 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| MAURICE JENNINGS )<br>)<br>Plaintiff, )<br>v. )<br>)<br>)<br>EXPERIAN INFORMATION )<br>SOLUTIONS; INC. )<br>)<br>Defendant. ) | Civil Action No: 1:13CV1295 TSE/TRJ |

## COMPLAINT

Plaintiff Maurice Jennings ("Plaintiff"), by and through counsel, brings this Complaint against Defendant Experian Information Solutions, Inc. ("Defendant" "Experian") on the grounds and in the amounts set forth herein:

### Preliminary Statement

1. Mr. Maurice Jennings owned an investment property located in Fredericksburg, Virginia with his wife, and they never missed any payments or were in default. After their attempts at a loan modification failed, they wanted to sell the home rather than struggle to keep making the payments on a depreciating investment. Because the mortgage exceeded the value of the property, they needed to negotiate a deal with the lender. The lender was unwilling to waive payment of the remaining balance due after a sale, but it was willing to accept the proceeds of a sale for less than full balance due and then modify the promissory note to provide for repayment of the remaining balance. The Jennings did not want to damage their good credit rating, so they agreed to a short sale with the loan modification terms as offered. The parties reached an agreement, and the house was sold in January 2011. The Jennings signed the loan modification in which

they agreed to pay the remaining balance due of $93,999.60 in 120 equal installments of $783.33 beginning on June 1, 2011 and continuing through May 1, 2021. Thereafter, they made all the payments on the new note on time and fully complied with the terms of the parties' agreement. On January 19, 2011, C. Michelle Buelow, the settlement attorney at Curran & Whittington, PLLC sent a letter to GMAC Mortgage along with the original signed and notarized Modification to the Original Promissory Note related to the short sale of the property. In this letter, Ms. Buelow advised GMAC Mortgage that it should not report this loan as "Account paid in full for less than full balance" to the credit reporting agencies because the account was not closed as Mr. Jennings and his wife had agreed to repay the entire deficiency balance. However, when Mr. Jennings reviewed his Experian file disclosures in February 2011, he was surprised to see that Experian reported the GMAC mortgage account as "Paid in settlement" with a purported "Creditor's Statement: 'Account legally paid in full for less than full balance.'" In addition to the inaccurate credit reporting, GMAC sent Mr. Jennings a letter advising him that his account was in default. Mr. Jennings disputed that account status in a letter he sent to GMAC on March 21, 2011 to which GMAC responded on April 13, 2011. In that reply letter, GMAC Mortgage stated that the default letter had been sent in error, that they had updated the account, and that this error had not affected any credit reporting for the account. GMAC's letter should have been the end of the issue, but unfortunately, it was not. Despite the fact that GMAC had acknowledged exactly what had occurred with this loan, the credit reporting by Experian indicated that the loan was settled for less than full balance due. When Mr. Jennings discovered that Experian was not reporting the account correctly, he disputed the trade line and requested Experian to correct the status of the

trade line. Experian refused to correct the credit reporting. On April 24, 2012, Mr. Jennings wrote a new dispute letter to Experian in which he enclosed copies of the Modification to the Original Promissory Note, the letter from the law firm Curran & Wittington PLLC, and the Settlement Statement (HUD-1). Experian had all the documents that it needed to see that the account it was reporting had not been paid in full for less than full balance. Despite all that information, Experian still refused to correct the reporting and forced Mr. Jennings to file the subject action. In fact, it is not believed that Experian conducted any investigation at all or sent out any ACDVs after receiving the April 2012 dispute letter. For the reasons stated in this Complaint, Mr. Jennings requests that a jury award compensatory damages, punitive damages, statutory damages, attorney's fees, and costs against Experian for its violations of the FCRA.

## Parties

2. Plaintiff Maurice Jennings, (Mr. Jennings or "Plaintiff") is a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because he is an individual. Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Maurice Jennings.

3. Defendant Experian Information Solutions, Inc., (hereinafter "Experian"), is a foreign limited liability company with a principal office address in Washington. Experian is a consumer reporting agency, as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties. Experian regularly conducts these business activities in the Eastern District of Virginia by providing credit reports and other

products to consumers and businesses in the Alexandria division of the Eastern District of Virginia.

## Jurisdiction & Venue

4. This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681(p). Venue is proper in this jurisdiction.

## Factual Allegations

5. Mr. Jennings, along with his wife, owned a property located in Fredericksburg, Virginia, 2202 Idlewild Boulevard, Fredericksburg, Virginia 22401 (hereinafter "the property"), and they had a mortgage on the property with GMAC. Based upon the developments in the housing market, Mr. Jennings and his wife wanted to liquidate the property because it was an investment that was not performing. They did not want to default on the loan or suffer any adverse credit consequences, so they sought a resolution via short sale with an agreement to repay the remaining balance that would diminish their responsibility while at the same time protect their credit after attempts at a loan modification failed.

6. On December 20, 2010, the Note Holder, via its agent, sent an agreement related to the proposed short sale and repayment of the remaining balance owed on the property. Mr. Jennings and his wife signed and accepted the short sale agreement and proceeded toward closing to complete the sale of the property.

7. On January 17, 2011, Mr. Jennings and his wife signed a modification to the original promissory note with GMAC mortgage. As a result of the modification the promissory note was modified to an unsecured debt with the sum due of $93,999.60 and 120 equal installments of $783.33 beginning on June 1, 2011 and continuing through May 1, 2021.

8. On January 18, 2011, the settlement occurred for the sale of the property. As of January 18, 2011, Mr. Jennings had never made any late payments on the property, sold the house related to the mortgage, and signed a modification agreement payment plan for the remaining balance owed. Mr. Jennings had paid and/or agreed to be responsible to pay for the entire amount due and owing on the property. As a result of the settlement closing, Mr. Jennings and his wife had fully complied with all of the terms of the short sale agreement.

9. On January 19, 2011, the settlement attorney, C. Michelle Buelow of Curran & Whittting, PLLC, sent a letter to Thomas Smallridge of GMAC Mortgage Loss Mitigation detailing what had transpired regarding the mortgage for the property. The letter included the original signed and notarized Modification to the Original Promissory Note and went on to place GMAC on notice how to report the transaction properly on the credit file. The letter stated in part, "Given the fact that the above-referenced borrowers have signed a Modification to the Original Promissory Note agreeing to repay the entire deficiency balance; and given the fact this account is not being closed, we request that this transaction be reported accurately to the credit reporting agencies, not reported as "Account paid in full for less than full balance."

10. Unfortunately for Mr. Jennings, Experian would report the account status exactly how the letter warned GMAC not to report the account in a consumer file disclosure on February 21, 2011, Experian reported the account as "Account legally paid in full for less than full balance. Experian's credit reporting was totally inaccurate since the original note was paid down in part from the sale of the property and modified to provide for repayment of the balance due and remaining. Based upon information and

belief, Mr. Jennings initiated a dispute with Experian via the on-line submission process. Mr. Jennings is without any information as to what if anything Experian did to investigate the initial dispute in accordance with its responsibilities pursuant to 15 U.S.C. §1681i of the Fair Credit Reporting Act. Accordingly, additional discovery is necessary regarding Experian's actions, but based upon subsequent credit reports Experian did not correct its reporting of the GMAC account on its credit files.

11. On March 21, 2011, Mr. Jennings sent a letter to GMAC Mortgage regarding the GMAC account and the credit reporting. The letter stated that GMAC had sent Mr. Jennings and his wife a letter that the account was in default for the monthly payments of January 2011 and February 2011. Based upon information and belief, this letter was sent in error based upon the timing of the settlement for the loan and processing of the payments related to the closing.

12. On April 13, 2011, GMAC responded to the March 21, 2011 letter and stated in part, "This letter is in response to your inquiry regarding the default letters received on the above-referenced account. Please accept our apology for any inconvenience this matter may have caused. The default letters that you have received were issued in error. We have updated the account to confirm you will not receive any further delinquent account notices. This error has not affected any credit reporting for this account. Our records indicate a short sale was completed on January 18, 2011. A Note was signed for an unsecured loan for the remaining balance of the mortgage." At the time of the April 13, 2011 letter, GMAC knew how the account should be reported, yet the GMAC account was still reporting incorrectly on the Experian credit file for Mr. Jennings.

13. On April 22, 2011, Mr. Jennings received another copy of his Experian file disclosure. Just as had occurred in February 2011, Experian reported that the GMAC account was settled for less than full balance. Based upon information and belief, Mr. Jennings initiated another on-line dispute of Experian's reporting, but he is unaware of what if anything that Experian did to investigate the credit reporting on this occasion.

14. On June 12, 2011, Experian sent another consumer file disclosure to Mr. Jennings. On this file disclosure, Experian continued to report that the GMAC account was settled for less than full balance, which was not accurate nor in accordance with what GMAC admitted had transpired in the letter that it sent Mr. Jennings in April 2011.

15. On June 22, 2011, Mr. Jennings also received a copy of his TransUnion consumer file disclosure. On this document, TransUnion reported that the GMAC mortgage had a pay status as paid or paying as agreed, a zero balance, indicated no late payments in the last 25 months and did not state that the account was "legally paid for less than full balance" as Experian continued to report. Given GMAC's letter and TransUnion's consumer file disclosure, a reasonable inference is that Experian was simply failing to report the account accurately.

16. On November 24, 2011, based upon information and belief, Experian provided an inaccurate credit report to Macy's when Mr. Jennings applied to get a charge store credit card. Macy's would not approve his request for a credit card, and Mr. Jennings suffered significant distress as a result of the credit denial because he worked as security manager at Macy's at the time of the credit denial. Given the typical holiday season volume of customers and the fact that he was in a position of trust as a security manager, Mr. Jennings was embarrassed to have his credit request declined unexpectedly.

17. Mr. Jennings believes that he disputed Experian's reporting on-line on subsequent occasions, but additional discovery is necessary as to the times and the contents of some of the disputes with Experian.

18. On April 24, 2012, Mr. Jennings sent a letter with attachments to Experian in an effort to get them to correct their inaccurate credit reporting. In this letter, Mr. Jennings explained the situation, why Experian was inaccurately reporting the status of the GMAC account, and included supporting documentation in the form of modification to the original promissory note, the letter from the settlement attorney's office on how the account should be reported, and a copy of the HUD-1 settlement statement. Given the description of the events in the GMAC apology letter along with the documents, there is no conceivable way that Experian could continue to report the account as paid in full for less than full balance after receiving the credit dispute package.

19. Unfortunately for Mr. Jennings, he was swept up into Experian's credit dispute procedure that Experian designed to short circuit consumer disputes by invoking a narrow exception to dispute investigation requirements that permits a credit reporting agency to refuse to investigate disputes that it deems frivolous or irrelevant. On May 7, 2012, Experian sent Mr. Jennings notice that it had already investigated the disputed information and that it would not investigate further his dispute because it decided that his dispute was frivolous or irrelevant. Given that Experian continued to report inaccurate information and Mr. Jennings provided extensive additional information in his written dispute package, Experian had no reasonable basis to declare the dispute frivolous or irrelevant and thereafter fail to investigate independently, issue an ACDV to GMAC, and correct its credit reporting for the GMAC account.

## COUNT I
## Fair Credit Reporting Act
## 15 U.S.C. §1681i

20. Plaintiff incorporates paragraphs one (1) to nineteen (19) as if fully stated herein.

21. Defendant Experian has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. Experian is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681i by failing to conduct reasonable investigations into the accuracy of the plaintiff's credit report with regards to the trade line with GMAC Mortgage.

22. Experian willfully and negligently violated 15 U.S.C §1681i as part of its investigation of Mr. Jennings's disputes. Experian failed to conduct a reasonable investigation because it failed to conduct a detailed and systematic inquiry into how the GMAC account should be reported on Mr. Jennings credit file. Experian has implemented a credit dispute investigation system that recklessly disregards its duties as a credit reporting agency under the FCRA.

23. Experian has created a credit dispute procedure and structure that is designed to lower the costs of credit dispute investigations at the expense of accuracy of a consumer's credit report. Experian encourages consumers to initiate credit disputes on line which eliminates the need and cost of an outsourced employee reading a dispute letter and coding the dispute into the e-oscar system. The on line dispute system limits the information that the consumer can provide and does not allow the consumer to attach supporting documentation. The result is that the consumer has no idea what if anything

Experian did to investigate the on line dispute, and the on line process allows Experian to circumvent its own responsibilities to conduct an independent investigation because the on line procedure significantly limits the amount and type of information that a consumer can provide to Experian for consideration.

24. In the present case, Mr. Jennings initiated on line disputes, but Experian failed to conduct a proper investigation into how it reported the GMAC account. Based upon information and belief, Mr. Jennings conducted an on line dispute in February 2011, but the GMAC account remained on his Experian credit file. As the documents related to the investigation are solely within the custody and control of Experian, additional discovery is necessary as to what if any actions that Experian undertook as a result of any on line disputes initiated by Mr. Jennings.

25. Experian also both negligently and willfully violated the FCRA after receiving Mr. Jennings credit dispute package in April 2012. On this occasion, Experian intentionally terminated its investigation before it even began and failed to review or consider any of the additional information and documentation provided by Mr. Jennings in that dispute letter. Despite the fact that Mr. Jennings had provided new information and documents, Experian refused to consider them. Experian summarily terminated the investigation pursuant to a policy that Experian does not initiate investigations of previously "investigated" items. This procedure is inapposite of Experian's duties as a credit reporting agency and designed to minimize the volume and costs of disputes that Experian has to investigate.

26. For the aforementioned reasons, Experian has recklessly disregarded its duties as a credit reporting agency, and the Plaintiff is entitled to punitive damages for this conduct.

27. As a result of Experian's actions, Mr. Jennings suffered loss of time dealing with the problem, emotional distress, the loss of the ability to use his credit, and loss of the ability to act as a personal guarantor for loans for a business. Mr. Jennings requests all actual damages, compensatory damages, punitive damages, statutory damages, and costs as a result of Experian's violations of the FCRA.

## COUNT II
### Fair Credit Reporting Act
### 15 U.S.C. §1681e(b)

28. Plaintiff incorporates paragraphs one (1) to twenty-seven (27) as if fully stated herein.

29. Defendant Experian has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. Experian is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the plaintiff's credit report.

30. Experian willfully and/or negligently violated the Fair Credit Reporting Act at 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information reported about Plaintiff. Despite disputes made by the Plaintiff and supporting documentation provided by the Plaintiff wherein said documentation expressly demonstrated that Experian's credit reporting was

inaccurate, Experian did not provide accurate information when it published Mr. Jennings credit report. Based upon information and belief, Experian provided an inaccurate credit report to Macys on November 24, 2011, to Wells Fargo on July 25, 2013, and to The Business Backer on July 25, 2013.

31. Experian's violations of the Fair Credit Reporting Act were a substantial factor in the denial of credit to Mr. Jennings. Mr. Jennings suffered damages including: the denial of credit, loss of time working to restore his credit; loss the use of his good name; and emotional distress caused by Experian's violations of the FCRA.

32. Punitive damages in this matter are also warranted based upon Experian's reckless disregard for maintaining reasonable procedures to assure maximum possible accuracy of the Plaintiff's credit information. Experian had the original documents and knowledge of how GMAC was told to report the account on Plaintiff's credit file after the home loan settlement. Experian ignored this information and relied upon its automated and outsourced credit reporting and investigating procedure, which resulted in the publication of inaccurate and misleading credit data. Experian has actual knowledge of the problems associated with its system through other lawsuits and consumer disputes, yet it recklessly disregards the requirements of the FCRA to the detriment of all consumers. Only serious and substantial punitive damages will force Experian to alter its conduct.

### Prayer for Relief

Wherefore, the plaintiff prays that the Court award the following relief:

a) compensatory damages against Experian;

b) punitive damages based upon Experian's repeated violations of the FCRA;

c) statutory damages against Experian based upon multiple violations of the FCRA;

d) interest, pre-judgment interest, costs and reasonable attorneys' fees incurred by the Plaintiff;

e) all other further relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury as to all issues against all defendants.

Respectfully submitted
Maurice Jennings

By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
11790 Sunrise Valley Dr., Suite 103
Reston, Virginia 20191
(571) 313-0412
(571) 313-0582